### DANIEL SNOWHILL ET AL. v. DAVID R. REED.

A lease, to run for one year, contained a covenant that the tenant would deliver up the possession of the premises on the expiration of the said lease, in as good repair as the same were at the commencement thereof. There was a surrender of the lease before the end of the year, and in an action for breach of the covenant to leave in repair—*Held*, that the tenant was not relieved from the performance of his covenant on account of the surrender before the end of the year; that he was by the terms of his covenant to perform at the expiration of the lease, and not at the end of one year, and the lease expired at the time of the surrender.

On *certiorari* to Monmouth Common Pleas.

The plaintiffs made a lease to defendant of certain premises for the term of one year. The lease contained a covenant that the tenant, on the expiration of the said lease, would deliver up the possession of said premises to the lessors or their legal

representatives in as good repair as the same were at the commencement of the lease, reasonable wear and tear and damages by fire, war and trespass only excepted. The term would have ended on October 1st, 1884.

On August 29th, 1884, the lessors and lessee entered into an agreement by which it was agreed that in consideration of the tenant relinquishing possession on the 1st day of September, 1884, the landlords agreed to release the tenant from the payment of a portion of the rent which the latter party had covenanted to pay. The tenant was, by said agreement, permitted to retain use of a room in said property in which to store his goods for such reasonable time as would permit him to secure other apartments.

In pursuance of this arrangement the said premises were surrendered on September 1st, 1884.

It was proved on the trial that the tenant, while in possession, had removed and destroyed three counters and some shelving fixtures ; that he had painted a sign in large letters on the building and had permitted the walls of the room to be stained by heaping tobacco against them.

After the surrender, the plaintiffs notified the defendant to put the premises in the same condition as they were at the commencement of the lease, and afterwards, on his failure to do so, sued the defendant for a breach of the covenant contained in the lease. The Court of Common Pleas found for the defendant.

Argued at November Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, DIXON and REED.

For the plaintiffs in *certiorari, Alan H. Strong.*

For the defendant, *Samuel A. Patterson.*

REED, J. It is first objected by the counsel for the plaintiffs in *certiorari* that the court below admitted evidence improperly.

This was oral testimony, on the part of the defendant, to the effect that while the negotiations for the agreement to surrender were in progress one of the plaintiffs said that if the defendant would let the plaintiffs have the property they would not ask him to put back the counters and shelving.

This testimony was improperly admitted.

The writing itself was complete upon its face. It expressed clearly upon what terms the surrender should be made. The parol testimony engrafted a new term upon the written agreement, and for this purpose its reception was illegal. *Naumberg* v. *Young*, 15 *Vroom* 331.

This error will lead to a reversal, unless by the arrangement to surrender the defendant is relieved from a performance of the covenant to leave the premises in as good repair as they were at the commencement of the lease. The term, by the lease, was to run from October 1st, 1883, to October 1st, 1884. Had there been no accepted surrender, the covenant would have been performed by leaving the premises in repair on October 1st, the end of the term. The tenant was not bound to keep the premises in repair during the continuance of the term, but only to leave them in good repair at the end of the term. Nor is it deniable that a surrender terminates the tenant's estate, and with it all covenants contained in the lease, and operates to relinquish all rights of action for breaches which did not occur during the life of the lease. *Platt on Covenants* 585; *Deane* v. *Caldwell*, 127 *Mass.* 242.

The question here presented is whether the covenant was broken during the life of the lease. If it could not be broken until the end of the term named in the lease, namely, at the end of one year, then it follows that it was at that time impossible for the tenant to perform.

By the surrender he was out of possession, and by the acceptance of the surrender the landlord had assented to an extinguishment of the covenant before any breach.

But I do not regard the covenant as one to leave the

premises in repair at the end of the period of time mentioned in the lease.

The time for performance was the time of expiration of the lease. The lease expired by reason of the surrender as effectually as it would have expired by the efflux of time without a surrender. When, therefore, the defendant entered into an arrangement for a surrender, the event upon which the performance of his covenant was dependent was shifted from October 1st to September 1st.

This conclusion seems to accord with the result in the case of *Austin* v. *Moyle, Noy* 118, cited at length in *Platt on Covenants.* A leased to B for ten years, and B covenanted to leave four acres of the ground fallowed and plowed at the end of the term, and in the lease there was a proviso that if B mistake his bargain he may surrender his estate on a year's warning.

B afterwards surrendered accordingly, and it was adjudged by the court that the surrender was no dispensation of the covenant, but otherwise, if the lessee had covenanted to leave the four acres fallowed and plowed at the end of the ten years, for then the acceptance of the surrender before the expiration of the ten years would have made it impossible for the tenant to perform his covenant.

In the above case it is true that the option of a surrender before the ten years is contained in the lease, and so this ending of the term may be said to have been in accordance with the terms of the lease itself.

But I am unable to see in what way the insertion of the right to surrender in the lease affects the principle. The construction of the covenant still remains to be determined by the inquiry whether the tenant was to perform at the end of the period named in the lease, or at the expiration of the tenant's term.

If the former, then a surrender before the arrival of the end of the period named discharges the covenantor.

If the latter, then a surrender, which itself ends the term, fixes the time of the surrender as the time for performance.

I construe the present covenant to bind the tenant, not to leave the premises in repair at the end of one year, but whenever the lease shall end, and that it ended, within the meaning of the covenant, by the surrender.

The judgment below should be reversed.

BEASLEY, CHIEF JUSTICE, and DIXON, J., concurred.

DEPUE, J. (dissenting). The plaintiffs, by a lease under seal, demised certain premises to the defendant for the term of one year from October 1st, 1883. On the 29th of August, 1884, the parties concluded an agreement in writing, endorsed on the lease, for the surrender of the premises, in these words :

"August 29th, 1884.

"In consideration of David R. Reed, the within-named lessee, relinquishing possession of the within-described premises to said lessors, on the first day of September, A. D. eighteen hundred and eighty-four, the said lessors do hereby agree to release said Reed from the payment, on within lease, of twenty and eighty-five hundredths dollars, leaving a balance due on within lease by said Reed of forty-one and sixty-five hundredths dollars. The said lessors, however, to allow said Reed to retain possession and use of the room in said property in which he shall store his goods, for such reasonable time as will permit him to secure other apartments.

"DANIEL SNOWHILL."

At the time this agreement was signed, the defendant owed three months' rent up to September 1st, 1884. In pursuance of the agreement, the defendant, on the 1st of September, surrendered the premises, which surrender the plaintiffs accepted.

The lease contained a covenant by the lessee that on the expiration of the said lease he would deliver up the possession of said premises to the lessors or their legal representatives in as good repair as the same were at the commencement of the lease, reasonable wear and tear and damages by fire, war and

trespass only excepted. Shortly after the surrender, the plaintiffs notified the defendant to put the premises in the same condition they were in at the commencement of the lease, and, after the expiration of the term mentioned in the lease, sued the lessee for a breach of the covenant. To maintain the breach assigned, the proof was that when the defendant took possession of the premises, which had been used as a store, there were three counters and some shelving fixtures therein, all of which the tenant removed and destroyed; that he also had painted a sign in large letters on the front of the building and permitted the walls of the rooms to be stained by heaping tobacco against them.

Two questions arise upon this record. The first relates to the ruling of the court below on the admission of evidence.

The court admitted oral testimony on the part of the defendant that during the negotiations between the parties at the time the agreement of August 29th, 1883, was signed, and before it was signed, Daniel Snowhill, one of the plaintiffs, who negotiated the agreement on the part of the plaintiffs, said that if the defendant would let the plaintiffs have the property they would not ask him to put back the counters and shelving. The parties were at that time negotiating for a surrender of the premises by the defendant, and the terms upon which the surrender should be made. The written agreement expresses what was to be done by both parties. The defendant was to surrender the premises on the 1st day of September, and the plaintiffs were to release a certain part of the rent then due and unpaid. The writing on its face purports to express the entire agreement of the parties on the subject. The oral testimony received added another term to the agreement—that the plaintiffs should also give up their right to the counters and shelving. Parol evidence cannot be received for the purpose of altering an agreement in writing by adding to it a new term. *Naumberg* v. *Young*, 15 *Vroom* 331. See, also, chapters 11 and 12 of *Jones on Construction of Contracts*, §§ 126–156, where the competency of parol evi-

dence in its relation to written agreements is fully considered. The court below was in error in receiving this evidence.

The other question, which is the most important question in the case, relates to the effect of the agreement of August 29th, 1883, and the surrender of the premises, upon the plaintiffs' right to maintain this action. By the lease the term for which the premises were demised would have expired October 1st, 1884. The defendant surrendered September 1st, 1884. The surrender was accepted, and thereby the estate of the tenant was absolutely determined. *Com. Dig., tit.* " *Surrender*," *L.* The lease contained only the covenant that the lessee would deliver up possession of the premises at the expiration of the term in as good repair as the same were at the commencement of the term.

There is a distinction between a covenant to repair and keep in repair, and a covenant to deliver up the premises at the expiration of the term in as good repair as they were in at the beginning of the term. A covenant to repair and keep in repair requires the tenant to keep the premises in repair at all times during the term, and if they are out of repair at any time the lessor, upon such a breach, may sue during the term for the injury to the reversion. *Luxmore* v. *Robson*, 1 *B. & Ald.* 584; *Schieffelin* v. *Carpenter*, 15 *Wend.* 400; *Wood on Land. & Ten.*, § 370; 2 *Platt on Leases* 190. The removal of fixtures by the tenant, which he does not immediately replace, but which can be replaced before the end of the term, is not a breach of a covenant to keep in repair which will lay the foundation for an action on the covenant during the continuance of the term. *Doe d. Buwell* v. *Davis*, 15 *Jur.* 155. Where the covenant is simply to yield up the possession of the premises at the expiration of the term, there can be no breach until the term is ended, for the tenant has the whole term within which to repair. Although the lessee is liable to an action before the expiration of his term on a covenant to keep the premises in good repair, on a covenant to leave them in as good state as he found them, no action will lie till the end of the term. *Platt on Covenants* 289. If houses be let

to me for years, and I covenant to leave them in as good plight as I find them, and I throw down the houses, this is no breach of the covenant, for I may re-edify them, and therefore no action will lie upon this covenant until the end of the term. *Shep. Touch.* 173; 2 *Platt on Leases* 189; *Schieffelin* v. *Carpenter,* 15 *Wend.* 400.

The acts complained of—the removal of counters and shelving, painting a sign on the front of the building and staining the walls by heaping tobacco against them—were acts not inappropriate to the use of the building in the occupation and enjoyment of the premises by the tenant. These acts could only become wrongful, and a breach of the covenant sued on, by the tenant's neglecting to replace the counters and shelving, and to restore the front of the building and the walls to their original condition, and he had the full term specified in the lease within which to make the reparations. His covenant was not broken when the surrender was made and accepted. By the surrender the tenant's estate was absolutely determined. The termination of the tenant's estate before the expiration of the term extinguishes all covenants dependent on the interest enjoyed that were not broken when his estate was determined ; for the land being gone the covenant is annulled. *Platt on Covenants* 585. Thus, in covenant against a lessee for years, upon a covenant that at the end of the term the tenant would leave and yield up the tenements well repaired, the defendant pleaded that one B. was seized in fee until by the plaintiff disseized, and that B. afterwards re-entered and enfeoffed J. S., who is yet seized, &c., and it was adjudged on demurrer a good bar ; for the land being gone the obligation was discharged. *Andrews* v. *Needham, Noy* 75; *Cro. Eliz.* 656; 6 *Vin. Abr.* 417, *tit. "Covenant,"* 2. The effect of a surrender by mutual consent is to terminate the relation of landlord and tenant, and with it all covenants in the lease which had not then matured. *Shep. Touch.* 300; *Taylor on Land. & Ten.,* § 518; *Bain* v. *Clark,* 10 *Johns.* 425, 427; *Deane* v. *Caldwell,* 127 *Mass.* 243, 248. *Austin* v. *Moyle, Noy* 118, does not sustain a contrary rule. The lease provided for a

term of ten years, or a less term if the tenant should so elect and give a year's warning. There was no surrender in virtue of a new agreement between landlord and tenant. By the election of the tenant the lease itself became a lease for a shorter term, and the covenant to leave four acres fallowed and plowed at the end of the term applied.

Independent of the legal effect of the surrender upon the covenant of the tenant, of which there had been no breach up to the time of the surrender, the agreement of August 29th operated to discharge the defendant from the obligation to perform this covenant. The agreement contemplated the entire dissolution of the relation of landlord and tenant, and, when executed by the acceptance of a surrender, produced that result. The only obligation reserved by the plaintiffs to be performed by the defendant was the payment of part of the overdue rent. The plaintiffs could not require the defendant, in addition thereto, to re-enter and repair the premises without adding a new term to the agreement.

I think that the covenant sued on was discharged by the surrender and its acceptance, and that the error of the court in receiving the evidence objected to was immaterial.